[No. B219372. Second Dist., Div. Six. Feb. 24, 2011.]

TONYA SMITH, Plaintiff and Respondent, v.
HOME LOAN FUNDING, INC., et al., Defendants and Appellants.

COUNSEL

Horvitz & Levy, Bradley S. Pauley, James A. Sonne; Wolfe & Wyman and Stuart B. Wolfe for Defendants and Appellants.

Law Office of Jeff A. Mann and Jeff A. Mann for Plaintiff and Respondent.

OPINION

**GILBERT, J.**—The mortgage lender who also acts as a mortgage broker must keep in mind the differences between the two when speaking to a prospective client. A mortgage broker has a fiduciary duty to a borrower. A mortgage lender does not. This case teaches that a mortgage lender should take care not to convey to a prospective client that it is acting as a broker when in fact it is acting as a lender.

A mortgage broker appeals a judgment awarding damages against it for breach of fiduciary duty and misrepresentation. The broker contends there is no substantial evidence it acted as a broker, the amount of damages awarded is excessive, and there is no basis for an award of attorney fees. We modify

the damage award by eliminating damages awarded for a prepayment penalty. Such damages are inconsistent with an award of damages based on an interest differential over the 30-year term of the loan. We remand to the trial court for a recalculation of prejudgment interest based on the reduced damage award. In all other respects, we affirm.

## FACTS

Home Loan Funding, Inc. (HLF), was a California corporation that provided lending services for residential mortgages. It funded most of its loans directly to borrowers, and brokered some of its loans to third party lenders, Washington Mutual and World Savings Bank.

Anthony Baden worked for HLF as a loan officer. He had no real estate or mortgage broker license. In March 2006, Tonya Smith contacted Baden in response to an advertisement she received from HLF. She sought a $40,000 home equity line of credit (HELOC). Her home had existing first and second mortgages.

Baden told Smith he could "shop the loan." When asked whether Baden ever told her that he was a mortgage broker Smith replied, "I believe so, yes." Smith testified that she trusted Baden completely, and believed he would provide her with the best loan.

Smith signed a loan application. Thereafter, Baden told her she did not qualify for a HELOC because her credit scores were too low. He said he "shopped it" with other lenders. When asked how many other lenders he inquired about the HELOC, he testified, "Well, I don't recall the exact number. It was more than one." He said, "[W]e looked at every lender that offered a home equity line of credit that we were able to process." Baden admitted that when he worked for HLF he placed loans with other lenders.

Baden suggested that Smith refinance with a new first deed of trust. Smith expressed reluctance because her existing first trust deed had a prepayment penalty. Baden told her to check with a tax professional to see if the prepayment penalty would be tax deductible. Smith learned that it was and decided to refinance.

Smith contacted Baden who told her, "he would shop the best loan for me." She trusted Baden and did not contact another lender. Baden provided Smith with a $700,000 first trust deed. The loan had a term of 30 years with a variable interest rate. The loan contained a 3.85 percent margin over the indexed interest rate.

Smith did not want a prepayment penalty on the new loan. Baden represented to her that the new loan would have none. Baden reassured Smith

and her husband throughout escrow that there would be no prepayment penalty and sent an e-mail to assure them.

Although the promissory note provided there was no prepayment penalty, a prepayment penalty was reinserted into the transaction by means of a rider. Smith did not notice the prepayment penalty when she signed the stack of loan documents. She had no reason to believe that Baden and HLF would mislead her. HLF was the direct lender for the loan.

Smith's expert, Luis Araya, testified that the commission available to HLF for the sale of the loan on the secondary market was greatly enhanced by the inclusion of both a prepayment penalty and a heavily marked-up margin. Araya also testified that a 3.85 percent margin is "[a]stronomical." He said Smith would have qualified for a loan with a 2.2 percent margin without a prepayment penalty. He would have been compensated through a loan origination fee. The maximum loan origination fee he ever charged was 1 percent. Araya testified that Smith could not refinance her loan in today's market. She could not provide sufficient documentation of her income. There are no longer loans available without documentation of income.

HLF's expert, Anand Khemlani, calculated damages based on both a 2.2 percent margin and a 2.65 percent margin.

The trial court found that Baden and HLF acted as loan brokers and breached their fiduciary duty to Smith. It found Baden misrepresented both the terms and the ultimate advisability of the loan. The court awarded Smith $21,908 in damages for the prepayment penalty. The court also awarded damages based on the difference between the 3.85 percent margin contained in the loan and the 2.65 percent margin for which Smith was qualified. The court calculated the difference over the 30-year life of the loan as $252,500. The court discounted that amount to its present value of $72,187.17, for a total of $94,095.17, plus prejudgment interest. Finally, the trial court awarded Smith $26,342.50 in attorney fees against HLF pursuant to Civil Code section 1717.[1]

## DISCUSSION

## I

HLF[2] contends the trial court erred in finding it had a fiduciary duty to act in Smith's best interest.

---

[1] All statutory references are to the Civil Code unless otherwise stated.

[2] Unless the context indicates otherwise, HLF and Baden are collectively "HLF" herein.

HLF does not dispute that a mortgage broker has a fiduciary duty toward the borrower. (*Wyatt v. Union Mortgage Co.* (1979) 24 Cal.3d 773, 782 [157 Cal.Rptr. 392, 598 P.2d 45].) It argues, however, that it acted only as Smith's direct lender, not her mortgage broker.

■ Business and Professions Code section 10131 provides in part: "A real estate broker within the meaning of this part is a person who, for a compensation or in expectation of a compensation, regardless of the form or time of payment, does or negotiates to do one or more of the following acts for another or others: [¶] . . . [¶] (d) Solicits borrowers or lenders for or negotiates loans or collects payments or performs services for borrowers or lenders or note owners in connection with loans secured directly or collaterally by liens on real property or on a business opportunity." The mortgage broker acts as the borrower's agent. (*Winnett v. Roberts* (1986) 179 Cal.App.3d 909, 919 [225 Cal.Rptr. 82].)

■ Financial Code section 50003, subdivision (m), defines a mortgage "Lender" as "a person [who] . . . directly makes residential mortgage loans, and . . . makes the credit decision in the loan transactions." The relationship between a lending institution and a borrower is not fiduciary in nature. (*Nymark v. Heart Fed. Savings & Loan Assn.* (1991) 231 Cal.App.3d 1089, 1093, fn. 1 [283 Cal.Rptr. 53].) HLF argues Smith produced no substantial evidence that HLF or Baden acted as her broker.

"In viewing the evidence, we look only to the evidence supporting the prevailing party. [Citation.] We discard evidence unfavorable to the prevailing party as not having sufficient verity to be accepted by the trier of fact. [Citation.] Where the trial court or jury has drawn reasonable inferences from the evidence, we have no power to draw different inferences, even though different inferences may also be reasonable. [Citation.] The trier of fact is not required to believe even uncontradicted testimony. [Citation.]" (*Rodney F. v. Karen M.* (1998) 61 Cal.App.4th 233, 241 [71 Cal.Rptr.2d 399].)

■ Here, when asked whether Baden ever told her he was a mortgage broker, Smith testified, "I believe so, yes." HLF argues, "I believe so" does not constitute substantial evidence. Assuming that to be so, there is more evidence. Baden told Smith he "shopped" the HELOC. Baden himself testified that he did not recall how many lenders he inquired about the HELOC, but he said, "It was more than one." Baden testified, "[W]e looked at every lender that offered a home equity line of credit that we were able to process." When Smith agreed to refinance, Baden told her "[he] would shop the best loan for [her]." HLF concedes that it placed some loans with brokers. Baden admitted that when he worked for HLF he placed loans with other

lenders. There is more than ample evidence to support the trial court's finding that HLF and Baden acted as a mortgage broker and owed Smith fiduciary duties.

HLF argues that the court cannot find it breached its contract to. act as a mortgage broker when the loan documents themselves identify HLF as the lender. But that HLF ultimately persuaded Smith to accept one of its loans, hardly negates that HLF undertook to act as Smith's broker. Instead, it is evidence of HLF's and Baden's self-dealing at the expense of Smith.

## II

HLF contends the trial court erred in awarding damages for the full life of the 30-year loan. It claims there is no evidence Smith would hold the loan or the property for 30 years.

In *Hutton v. Glicksberg* (1982) 128 Cal.App.3d 240, 251–252 [180 Cal.Rptr. 141], the court upheld the trial court's award of damages based on the difference in interest calculated over the entire 30-year term of the loan. In *Stratton v. Tejani* (1982) 139 Cal.App.3d 204, 214 [187 Cal.Rptr. 231], however, the court disagreed with *Hutton*. In *Stratton*, the court stated calculating the interest differential over the entire 30-year term lacks a factual basis. (*Ibid.*) The court stated that residential real property typically is held for only seven to 10 years. (*Ibid.*, citing 1 Miller & Starr, Cal. Real Estate (1982 Supp.) pt. 2, § 5.18, p. 54.) The court remanded the matter to the trial court to exercise its discretion in selecting a method of calculating the interest differential. (*Stratton, supra*, at p. 215.)

We think *Stratton* is not applicable here. That the mortgage has a term of 30 years is sufficient to support the trial court's calculation. (*Hutton v. Glicksberg, supra*, 128 Cal.App.3d at pp. 251–252.) The actual term of the mortgage provides a more solid foundation for the calculation of damages than speculation based on what the typical homeowner may or may not do, particularly in today's uncertain housing market. The evidence is that Smith does not qualify to refinance. She is more likely than anyone to be saddled with a 30-year mortgage.

We agree with HLF, however, that it is inconsistent for the trial court to award damages based on both the 30-year term of the mortgage and the prepayment penalty. The rider to the note limits the prepayment penalty to three years. We therefore strike the $21,908 in damages arising from the prepayment penalty.

## III

HLF contends the trial court erred in awarding Smith contract-based attorney fees.

The note secured by the deed of trust provides in part: "[T]he note holder will have the right to be paid back by me for all its costs and expenses in enforcing this note, [including] reasonable attorneys' fees." The trust deed provides in part: "Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in [the section concerning borrower's breach of any covenant or agreement in the trust deed], including, but not limited to, reasonable attorneys' fees . . . ."

The trial court granted Smith's motion for attorney fees under section 1717. It provides in part at subdivision (a): "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs. [¶] Where a contract provides for attorney's fees, as set forth above, that provision shall be construed as applying to the entire contract . . . ."

HLF argues that although Smith is the prevailing party, she did not prevail in an "action on a contract." HLF points out that under section 1717 a prevailing party cannot recover fees for actions based on tort including breach of fiduciary duty and misrepresentation. (Citing *Moallem v. Coldwell Banker Com. Group, Inc.* (1994) 25 Cal.App.4th 1827, 1830 [31 Cal.Rptr.2d 253].)

But here, in addition to breach of fiduciary duty and misrepresentation, the trial court found HLF breached the implied covenant of good faith and fair dealing. HLF concedes that the implied covenant is contract based, and that breach of the implied covenant can sometimes support an award of fees under section 1717. It cites *Sawyer v. Bank of America* (1978) 83 Cal.App.3d 135, 140 [145 Cal.Rptr. 623], for the proposition that the covenant must arise from the contract providing the right to fees, and not from a separate agreement.

In *Sawyer*, the plaintiff financed the purchase of a truck through the bank. The agreement securing the loan contained an attorney fees clause. The plaintiff relied on the bank to purchase insurance for him, and had done so for at least four prior vehicles. The bank allowed the insurance on the truck to lapse, after which the truck was damaged in an accident. The plaintiff prevailed on his suit against the bank to recover the cost of repairs, and obtained an award of attorney fees under section 1717.

In reversing the award of fees, the Court of Appeal stated: "Reference to the complaint establishes that respondent sued not on the written security agreement, which contained a provision for attorney's fees, but on a separate agreement arising either from oral communications between the parties or from their course of dealings. There is no allegation or proof that the separate agreement included a provision for attorney's fees. Therefore, the case is governed not by . . . section 1717 (which allows a reciprocal award of fees where a contract provides for an award to one of the parties) but by the basic rule in this jurisdiction that attorney's fees are generally not shifted to the prevailing party. [Citation.]" (*Sawyer v. Bank of America, supra*, 83 Cal.App.3d at p. 140.)

Here, not only did HLF have a fiduciary obligation, but Baden made an express oral promise to Smith that "he would shop the best loan for [her]." Unlike *Sawyer*, the trial court treated the oral brokerage agreement and the loan documents as a single agreement. This was justified because they were all part of the same transaction. (§ 1642 ["Several contracts relating to the same matters, between the same parties, . . . are to be taken together"].) The award of attorney fees was proper.

The damages awarded are reduced by $21,908 attributable to the prepayment penalty. The matter is remanded to the trial court for a recalculation of prejudgment interest based on the reduced damage award. In all other respects, the judgment is affirmed. Costs on appeal are awarded to Smith.

Yegan, J., and Perren, J., concurred.

A petition for a rehearing was denied March 28, 2011, and the opinion was modified to read as printed above.